Number 25872, Paro Management Co., v. Willis, New Jersey. Good afternoon, Your Honors. May it please the Court. My name is Evan Schwartz. I represent the appellants. And I want to start by saying it's kind of an interesting situation, but the simple argument here is that the damages being suffered by the appellants in litigating the coverage case against Allied World are real, they're not hypothetical, they're recoverable under New York law under theories of negligent and negligent misrepresentation, and they exceed the jurisdictional limits of this Court, even though the appellants did not file this case in federal court, it was removed by the defendant. So on that one claim alone, regardless of the outcome of the underlying duty to defend and indemnify under the policy, the claims against the broker for failure to provide notice of the violation in 2014 to the carrier when asked to do so and promised by Willis to do so constitute an independent recoverable claim regardless of the outcome of the underlying case. So number one, the case is constitutionally ripe under those circumstances. And that also — and then moving to the just straight negligence claim contained in the complaint, the complaint is clear. It states that notice was provided to Willis, asked that notice would be tendered to the claimant, who didn't. Can I ask about — so the way the complaint puts it is it says, Willis had a duty to plaintiffs based upon their business relationship as plaintiff's broker and consultant for insurance matters. Such a duty arose from that relationship as well as the representations made by Willis and its employees and relied upon by the plaintiffs that notice would be provided to Allied, the verbal and written agreements and understandings of the standards of the industry. Willis asserted that it would take care of plaintiffs' insurance needs, including notifying Allied of the claim made in 2014 for lead paint exposure. Willis never provided the notice it represented that it would provide. So I can't really tell from that the circumstances under which Willis undertook this obligation to provide the notice. So paragraph — Is the argument that they had an ongoing duty to do things because of their role as an insurance broker, or did they make a specific undertaking and promise that they were going to provide the notice of the specific claim? Paragraph 43 of the complaint, just in the straight negligence claim, makes it clear that — Well, I read that. The representation made by Willis and its employees and relied upon by the plaintiffs that notice would be provided to Allied. So that is the — that count is repeated in the negligent misrepresentation claim as well. And while it's not the most artful pleading, it is stated that it was promised to be done. So there was some kind of explicit promise? There was a — there was a written promise. You don't — I mean, I don't know if we're in a position to do this, but let's say I wanted more factual detail about this question. Like, would you be able to amend to explain exactly when and under what circumstances they made the promise? Yes. All I have is the assertion that there was a promise, right? There was an e-mail and an e-mail response. It's not attached to the complaint. But the allegation in paragraph 43 is the promise was made, and the promise I represent as an officer of the court was made in writing. The e-mail was sent. A response from Willis was made saying, we'll take care of it. So the district court says that the broker doesn't have an ongoing duty to the insured unless there's a special relationship, right? Yes. And that's not correct on a straight negligence claim. When you're asked to undertake to do something and you do it negligently, that's straight negligence. That's what's bleeding here.  So you're saying, actually, we don't need a special relationship because here the duty arose not from their position as a broker, but from their express promise to undertake some — something on our behalf. Correct. So it'd be like just anybody promising to deliver the notice, you know, for — for  Yes. It's like the idea of the man helping the sick person on the street and doing it negligently. It's a straight negligence claim. And, again, the complaint — Well, the law is specific to the duties of brokers undertaking additional obligations. That's where the relationship comes from here, not just any man on the street kind of thing. Correct. But in a straight negligence case here where the broker was specifically asked to do something and it's alleged in the complaint that they said they would do it and they didn't, that creates a basis for regular negligence.  Now, the duty to procure is typically where you get into the special relationship. You didn't get me the right coverage. You didn't get me enough coverage. That's not what this is. Well, if there were a special relationship, I take it — I mean, the New York Court of Appeals has said where a special relationship develops between the broker and client, the broker may be liable even in the absence of a specific request for failing to advise or direct the client to obtain additional coverage. And so your point is this is not a case where there's an absence of a specific request. This is a specific request and the duty arose from that. That's my primary argument, Your Honor. What's your secondary argument? My secondary arguments, which we have laid out in the complaint, is that there is a claim for negligent misrepresentation and not just straight negligence where that promise was also made and done negligently. But for that claim, I mean, that is a promise of future conduct, right, which is not — can't be the basis of a negligent misrepresentation claim. Well, so the promises of future conduct that are in the case law are not, hey, tender this notice to the carrier. They have to do with things like promises to procure coverage. They have to do with — well, actually not. If you look at the cases that are cited in the brief, promise of job promotions and job transfers — Yeah, but regardless of the facts of the cases, the principle is that the negligent misrepresentation is for statements of existing fact versus promises to do things, regardless of what those things are. Right, but our argument is this is a present material fact and the case law, as it's developed — How is it a present material fact? It's a request. Provide notice. We'll do it. It's not — it's not like we're going to — we're going to give you a promotion in the future or we're going to honor our mortgage — you know, we're going to honor our mortgage commitment, which is more in the nature of promises of future intent. This is — this is present intent, to do something.  We'll do it is a statement of future intent, is it not? Technically, everything is a statement of future intent if someone asks you to do something and you don't do it. I guess I'm not understanding your argument on this. Explain again. How is a promise to deliver notice not a statement of future promise? It is, by definition. If you — if you look at, yes, I'm going to do something because you asked me to do it, it has to be done in the future. But what I'm saying is the case law around the facts surrounding promises of doing something in the future are more in the nature of speculative. Promises of energy outputs represent — But you're saying this is a — it would be a misrepresentation undisputably if Willis had represented, yes, I delivered the notice to the insurer and you don't have to worry about it anymore, and then Paro relied on it and didn't do anything to follow up. And you're saying even though this is technically a promise of the future, it's so concrete, it's tantamount to that kind of past performance. Correct. And the analogy that you just used, Your Honor, is more in the nature of where you're getting into what I would say is fraudulent intent as opposed to a negligent misrep. They intended to do something when they were asked to and they failed to do something. Oh, you're right. I'm saying when they didn't — when they didn't do it. But maybe it's negligent. Maybe — maybe the representation is you call them up on the phone and they say, oh, yeah, we must have taken care of that or something. Like they didn't really intend to misrepresent it, but it might be negligent. If they were talking about what they did, that would clearly be, you know, past a negligent misrepresentation. And you're saying this representation, even though it's technically future, is close enough to something that you could rely on like that, that we should consider it to be tantamount to a —  Yes, Your Honor. Because the cases that are in there that — where it was deemed to be future intent, were, as I said, Murray v. Xerox promise of job promotions and job transfers. Margrove v. — As we said — Promise to honor a loan commitment. As we said that this is, you know, this is a secondary argument. So your primary argument is that Willis undertook to provide the notice and then didn't accomplish it and that put you on the hook for having to sue the insurer and so on. That is correct. And — And even if Willis were not your insurance broker, if it were just a private party that undertook to do that for you, would you be able to sue them for negligence? Potentially. I'd have to know a little bit more about the facts, but potentially, yes. Because if you make a promise to somebody, you know, a duty of care usually arises. Like, I don't have to administer medical care to somebody in distress, but if I do, I can't do it negligently, right? Correct. And so then the idea is that the case law that says there needs to be a special relationship can't mean that your insurance broker has less of a duty of care than a third party that undertakes to do something. I'm sorry. I didn't hear that question, Your Honor. If it were true that you would — that in the absence of a special relationship, Willis would be able to make such a promise and not follow through, it would mean that an insurance broker has less of a duty of care than just any third party. I would agree with that, Your Honor. And I just want to emphasize that, in addition, what you have here is a situation where if this case is now dismissed, especially — not just on the question of fleeting causes of action, but on the ripeness grounds, you're in a situation where a statute of limitations is already run and they don't have the ability to pursue these claims no matter what the outcome is, and the defendant is arguing that this is — the outcome of the underlying cases is critical to whether or not they're liable, but they won't be liable under any circumstances if there's no ability of the appellants to commence an action in the future. So you wouldn't disagree. You said that you've already suffered a harm because you're incurring these litigation costs, but you don't know the extent of the harm until you know the final judgment in that case. So what should the district court do? Sort of stay the proceedings or stay the damages determination until the end of that litigation? Well, interestingly enough, the — Willis requested either dismissal or a stay in their original underlying motion. And certainly an outcome rather than dismissal — any outcome rather than dismissal would be much more preferred to the appellants. So a stay, while not perfect, would be certainly better than having the case dismissed and having the risk that they would never be able to bring it again. Now, if the dismissal was purely jurisdictional, and whether or not on a purely jurisdictional dismissal we'd be able to relate back to the time when the original complaint was filed in state court, I'm not sure. But I don't — I'm not — appellants don't want to take that risk, right? So a stay would certainly be — If the reason why — I understand you dispute that you have — you say that you have suffered a harm. But if a court were to conclude that you didn't suffer a harm, maybe the claim doesn't arise until you do. I don't know. Well, at the time of filing this complaint, there was $80,000 worth of fees and expenses going after Willis — I mean, going after Allied World. Now it's over $200,000 as we've been through summary judgment, which, by the way, I reported — from Allied in that litigation. But there seems to be some New York authority that suggests that you can't. Do you have a position on that? Very clear New York authority that when you are the plaintiff in a declaratory judgment action against an insurance company seeking coverage, if you succeed, you don't get costs and attorney's fees. The only situation is if the insurance company brings the declaratory judgment action, and that's the U.S. Underwriters v. City Club Hotels case that we cited in the brief from the Court of Appeals, where basically they've interpreted the law to say that's ongoing defense costs that relates to the undefended underlying claim, and therefore they're recoverable if you're sued by the insurance company, but not if you as the insured sue the insurance company. So they're not recoverable even if that underlying case, which, as I've reported to the Court this morning, the Court has denied summary judgment that that had not yet occurred. So the case is ongoing. But even under those circumstances, we're not getting attorney's fees for going after Allied World. Okay. Thank you, counsel. We'll interrupt. Thank you. Good afternoon. May it please the Court. My name is Kimberly Kochus, and I am here today on behalf of the Appellee Defendant Willis of New Jersey. District Court's decision dismissing plaintiff's claims on alternative grounds should be affirmed. First, the district court was correct in finding that plaintiff's claims are not ripe. And second, the district court was correct in finding that plaintiff fails to state a claim. Fails to state a claim. How can it not be ripe if what they're saying is because you didn't deliver the notice of the claim, we now have to go sue our insurance company to get them to cover it because they denied it because they didn't get the notice. And we would have been – we wouldn't have incurred those expenses if you had fulfilled your duty and provided the notice. With respect to the coverage action and the fees associated with plaintiffs pursuing coverage against Allies, the case law cited by plaintiffs in their reply is clear, that fees paid by an insured to bring a coverage action against an insurer or a broker are not recoverable from the insurer or broker. Right, so you can't – so in this action, they're not going to be able to recover the fees that – the cost that they incurred suing Willis from Willis. But if Willis is responsible in this action for the fact that they had to go after Allies, aren't those expenses that they're incurring and they wouldn't have had to occur if Willis had fulfilled its duty to power? Not under New York law, no. Under New York law, and Plaintiff's reply cites these cases, Great American v. Zellick and Chase Manhattan Bank v. Lloyds. And in both – in Chase Manhattan Bank, the insurer had argued for exactly the same argument as Plaintiff is making here, that its fees for pursuing the insurer for a denied claim were recoverable in a negligence claim. And the Court said no, that is not – that is not the case. The broker and the broker's liability under a negligence theory is – the liability imposed is that of as if the policy coverage had not been denied. So put another way is that the broker ends up standing in the shoes of the insurer with respect to liability. And because the – for a coverage action, the plaintiff, the insured, cannot recover its attorney's fees, the same is true in a negligence claim against the broker. A plaintiff cannot recover its fees for pursuing a claim against the insurer. That's how New York case law has developed. Is that really a standing argument? I mean, I guess – I guess, you know, we'll have to determine who's right about that question. But if we're just talking about injury causation and redressability, isn't it the case that they've suffered an injury that they wouldn't have suffered, you know, but for the fact that Willis – based on the allegations that the plaintiff, Willis failed to provide the notice in a timely fashion? They suffered – they may have suffered injury. They're paying incurring fees, according to the plaintiffs. But it has nothing – it's not recoverable at this point in time for under – from Willis under their negligence or negligent misrepresentation theories. So it's untethered to the claims that they're bringing in this case. The claims that they're bringing in this case aren't ripe at this point. And so how – what's your position about how that should be handled, that that requires a dismissal? Or does it – could it also allow for staying proceedings to see how that other case turns out? The district court was correct that this requires dismissal. There is – there is no constitutional ripeness in this case. There's no subject matter jurisdiction for the court. The case was appropriately dismissed. I guess I'm just having a hard time understanding why there's no Article III injury here. And so I know you've cited newer cases, and I'll take another look and see if those are on point. But to me, it seems like if, as alleged, Willis failed to deliver a notice that then forced Ferro to pursue coverage action against the insurer, that the cost of that litigation is an ongoing injury. And I just don't understand on a kind of common sense level why that's wrong. Absolutely, Your Honor. And just really at a 10,000-foot level, the reason why these claims aren't ripe with respect to the claims incurred in the coverage action is both because they're not recoverable in this case and, two, because of their contingent – Well, first of all, you're calling it ripeness. But, I mean, it's – your friend said that, you know, he's – his client's $200,000 into this. So I don't know why that's not – I mean, we can figure out the damages issue later, maybe. But it seems like there is some pocketbook injury there. Well, the claims relating to the incurred fees is also entirely contingent on a finding in the coverage action that the denial was caused by Willis's failure to provide the notice of violation. And, you know, as plaintiff supplemental authority that they submitted this morning demonstrates, Allied is making arguments in the coverage action that have nothing to do with the notice of violation. Allied is arguing that the 2019 – that the plaintiffs had notice of an asbestos claim prior to inception of the 2019 policy, that they were served with the complaint prior to the 2019 policy. There are no allegations that Willis was involved in procuring the 2019 policy. There are no allegations that Willis is in any way responsible for providing – Well, actually, they would have incurred the cost anyway because Allied would have provided a different reason for denying the coverage, right? They are providing a different reason for denying the coverage. That's what plaintiffs submitted today. Actually, that maybe peril will lose this case because they wouldn't really be able to show that the expenses that they've incurred were caused by Willis. But why should we have at the threshold standing inquiry a whole litigation over, you know, what are the proper bounds for – grounds for denying the claim, right? This doesn't seem like we're talking about standing anymore. Now you're sort of litigating this separate case about the insurance coverage. I'm not trying to litigate the separate case relating to the insurance coverage. What's key here is in what's just quintessential to the issue with respect to whether or not there's rightness here is plaintiff's own pleading and plaintiff's own opening brief. In paragraph 40 of plaintiff's amended complaint, plaintiffs state if, and this word warrants repeating, if coverage is denied for lack of notice, the failure for such lack of notice is due to Willis's negligent acts. If. Plaintiff's claims are wholly contingent. Well, I think that that is true. You know, if the coverage is denied for lack of notice, that will be due to Willis. But they also say regardless of whether the claims are denied, they're also incurring these litigation expenses as a result of Willis, right? But those litigation expenses may have nothing to do with the lack of notice. Well, the litigation expenses do have something to do with it because they are litigating because Willis – because Allied denied coverage because of lack of notice. It might turn out they have a separate basis for denying the coverage. But certainly the lack of notice has led to a litigation. Has it not? The denial is what led to the coverage action litigation. And the ground for the denial was what? It was the lack of notice, right? No. Well, there's multiple bases for the denial, one of them being – none of them having to do with the lack of notice. It had to do with whether or not there was information provided relating to pollution exclusion. But it wasn't – there was no finding or there was no specific denial based on the fact that there was not a notice of violation provided. That's an entirely separate coverage issue that has nothing to do with what's before the court right now. But isn't what you're articulating now a defense? Like aren't you just saying, well, actually, we don't owe them any money because they shouldn't be covered under the policy anyway. But their argument is we're losing coverage and we're having to sue our insurer because there wasn't the notice provided in a timely fashion. As the district court found, and Plaintiff himself pleads, is that this case is entirely contingent on the finding in the coverage action. There is no negligence or negligent misrepresentation claim. Okay. I think I have an argument. Can I just ask about the duty? So I had said before that it seems like under New York law, if in fact an insurance broker undertakes to have an ongoing special relationship and advising about insurance coverage, there could be a duty of care in failing to provide advice, even in the absence of a specific request. But here the allegations are that Paro asked Willis to deliver notice of the claim and that Willis undertook to do it. So why do you need a separate ongoing special relationship? Why doesn't the duty of care just arise from that promise? Well, first, Your Honor, Plaintiffs did not argue that the fact that it wouldn't matter if Willis wasn't the broker. I mean, the basis of Plaintiff's negligence claim is that there was some sort of a duty for Willis to inform them of the notice of violation because they were the broker. That's how their claims are pled and that's how they've argued this case. Well, I don't know. As I was saying, it's not totally clear because they do talk about how they are the broker, but then they also talk about specific promise to notify allies. But let's put aside the pleading question. Just isn't it true that if somebody undertakes to perform an act that causes harm, the duty of care arises from that promise? Again, that wasn't briefed to any of the courts. But, no, I don't think that's correct. I don't think that if, for example, the plaintiff had emailed their neighbor and said, hey, can you just submit this for me, and the person said, sure, we'll do, that that somehow creates some duty that would make them liable for the underlying coverage action litigation. That doesn't make any sense. And that's here the relationship, the negligence claim arises because Willis was the broker. And because of that, the plaintiff has to plead a special relationship, which they don't do here. If they just had hired a courier to deliver the notice and the courier didn't perform, couldn't they sue the courier for negligence? I don't, again, that wasn't briefed below, but I wouldn't think that they'd be able to sue for fees incurred in the coverage litigation that aren't, you know, that aren't allowed. No, I don't know that that's enough of a duty arises to put them, to make them liable. I mean, and there's good reason that New York case law has developed the way it has with respect to a special relationship. Courts require this special relationship because of public policy reasons. If you allowed, anytime a claim was denied, the insured to sue the broker, that would be creating inequities. So that's totally right, and that's why there's a special relationship requirement, which is every time a claim is denied, you can't sue your broker for not advising you to get the right insurance. There only is a duty if they've undertaken to provide you ongoing advice about the insurance you should get. That's right. But this is not that case, right? Because the allegation here is they specifically asked Willis to provide the notice, and they allege that Willis promised to do so. So then the duty would arise from that promise, not from some kind of ongoing duty to advise about insurance coverage, right? I don't agree that's where the duty arises. I think the duty that plaintiffs are arguing arises because of the relationship that Willis is the broker. I don't think that, like I said before, that if you emailed a neighbor and said, submit this, and they said okay, and then they didn't, that that would make them negligent under any of these theories. I mean, Willis is the broker. Martin Associates from the First Department says, if an insured asks the broker to take on additional responsibilities above and beyond procuring specifically requested coverage, and the broker agrees to do so, the duty is created that the broker must execute with reasonable care. How is that not applicable? What case are you talking about? Martin Associates. The National Insurance Company. In Martin Associates, and for all of the cases that plaintiffs cite, but for Martin, there was a clear course of conduct whereby the broker submitted claims on behalf of the insured. And in that case, in Martin, the broker represented to the insured that it in fact placed the carriers on notice when it hadn't. So the facts are very different here, where you have merely a promise to pay. The allegation is that they, that Willis made a promise to provide a notice and then didn't do it. In order to establish that special relationship, plaintiffs would have to allege a course of conduct, which is what you see in Martin. You see a course of conduct whereby the broker was always submitting claims on behalf of the insured. No such course of conduct. So you're saying if Martin just on the first promise failed to perform, then they wouldn't be, you couldn't sue them for negligence, but if you have multiple times, then some, at some mysterious point along this course of promises, a special relationship arises? Well, there could be various reasons why. But one of, if, for example, there was no agreement for the broker to submit claims on behalf of the insured and there was no course of dealing, then that's correct. There's no special relationship. That's how New York law has evolved on this issue. Okay. Thank you, counsel. We'll hear a vote. So I find it interesting, again, that Willis removes the case to federal court and then comes in and argues there's no subject matter jurisdiction. But putting that aside, number one, we disagree with the interpretation of the case law on the damages. We believe the damages are clearly recoverable and Your Honors will make that determination. And secondly, this case wouldn't be going forward, even though there's an independent basis for Allied World to challenge coverage. Had the notice been provided in 2014, when the lawsuit came in, it would have related back and it would have been covered under that policy, so we would never be in this litigation. It looks like Allied denied coverage on all sorts of different bases and actually the notice is not a particularly important ground. Do you have a response to that? Ask the question. I'm having trouble hearing you. We had just heard that actually Allied is denying coverage on multiple grounds. They're denying on one ground. They're denying it as to the timing of when my clients got served and knew that they were served with the lawsuit, because there's a period of time where there was a gap in coverage. So the policy that was enforced from 2010 to 2016 is the policy which the relation back for the notice of the 2014 violation would have been covered, but the 2019 to 2022 policy was a second policy that was issued, so there's a gap between 2016 and 2019. The lawsuit was served during COVID. My clients were in default. We moved and vacated the default because they never got notice until 2020. 2020 was during the 2019 to 2023, 2022 coverage period. Allied World is saying we got notice when it was served in 2017, even though my clients say they were never served and defaulted. So what they're saying is they were on notice prior to the inception of the 2019 to 2022 policy. So they don't have to pay it under the new policy, and they don't have to pay it under the old policy because of the lack of the new policy. Correct. But had the notice been provided, and you got it from Willis, you would have had coverage under the old policy. Correct. We wouldn't be in the litigation. And so that's all I have, Your Honor, as long as you have questions. Thank you, counsel. Thank you both. Thank you very much. We'll take the case under advisement.